Judgment rendered December 20, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,358-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STEVEN MARCUS KELLEY                    Appellant

Versus

JEANNIE MARIE KELLEY                    Appellees
(NOW JENKINS), ANDREA
GAIL KELLEY, AND
HANNAH GRACE KELLEY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2022-1731

Honorable Daniel J. Ellender, Judge

* * * * *

LAYNE M. ADAMS                          Counsel for Appellant

SNELLINGS, BREARD, SARTOR,              Counsel for Appellees
INABNETT & TRASCHER, LLP
By: Wendy E. W. Giovingo

* * * * *

Before PITMAN, COX, STEPHENS, THOMPSON, and HUNTER, JJ.

COX, J., concurs with written reasons.

THOMPSON, J., concurs with written reasons.

PITMAN, J., dissents with written reasons.

HUNTER, J., dissents with written reasons.

**STEPHENS, J.**

Steven Marcus Kelley ("Steven") and Jeannie Marie Kelley (now Jenkins) ("Jeannie") were married on December 10, 2011. At that time, Jeannie had two children, Andrea Gail, d.o.b. 5-21-03, and Hannah Grace, d.o.b. 3-21-07. Neither of the children are the biological children of Steven, something that both parties knew, and there is no other presumptive father involved.

On August 21, 2012, Steven, with Jeannie's concurrence, formally acknowledged Hannah Grace in an Acknowledgment of Paternity Affidavit form for a child born outside of marriage prepared by the State of Louisiana (VRR-44 2P (05/10)). On August 18, 2014, Steven, again with Jeannie's concurrence, acknowledged Andrea Gail in an Acknowledgment of Paternity Affidavit for a child born outside of marriage form prepared by the State of Louisiana (VRR-44 2P (1/05)). Again, these acknowledgements were entered into by both Steven and Jeannie fully aware that he was not the biological father of either child.

Both parties agree that before each acknowledgment, the notary public failed to apprise them, either in writing or orally, of the required information set forth in La. R.S. 9:392. Steven asserts that the reason he formally acknowledged each child was to give them his last name.

On February 6, 2019, Steven and Jeannie physically separated. On June 20, 2019, Jeannie filed an amended and supplemental petition for divorce requesting that Steven be ordered to pay child support. On May 16, 2022, Steven filed a petition to revoke his formal acknowledgment of the two children. On June 8, 2022, Jeannie filed an exception of no cause of action and peremption. On November 29, 2022, after a hearing, the trial

court sustained Jeannie's exception of peremption and dismissed Steven's petition for revocation of the acknowledgments of paternity.[1] Steven has appealed from this adverse judgment.

## DISCUSSION

Steven alleges that the trial court's judgment is erroneous and sets forth three assignments of error: (1) the trial court erred in finding that the 2016 amendment to La. C.C. 195 was procedural rather than substantive and applying the current version of the article to his action to revoke the acknowledgments; (2) the trial court erred in failing to find that acknowledgments, signed by both parents attesting that he was the biological father of the girls, were absolute nullities that were not subject to preemption; and (3) the trial court erred in failing to find that the notary's failure to advise him and Jeannie of the rights and requirements set forth in La. R.S. 9:392(A)(1)-(8) in conjunction with the execution of both acknowledgments as mandated by Louisiana law.

Jeannie contends that the trial court did not err in sustaining the exception of preemption. First, the trial court properly applied La. C.C. art. 195 as amended in 2016 to the facts of this case, as Steven knew when he signed the acknowledgments he had become the legal father to the girls. Jeannie next asserts that the trial court did not err in finding that the acknowledgments were not absolute nullities. In support, she cites *Wetta v. Wetta*, 21-92 (La. App. 3 Cir. 6/2/21), 322 So. 3d 365, *writ denied*, 21-00940 (La. 10/19/21), 326 So. 2d 255. As for Steven's argument that the

---

[1] No ruling was made by the trial court on the exception of no cause of action, so it is deemed denied.

2

trial court's judgment is erroneous because the requirements of La. R.S. 9:392 were not met, Jeannie disagrees, but even so, application of the unclean hands doctrine would prevent Steven from maintaining his cause of action.

In his second assignment of error, Steven asserts that the trial court erred in finding that an absolute nullity could be perempted. Steven concedes that under La. C.C. art. 195, the peremptive period is 180 days. Furthermore, that 180 days had passed when his petition to revoke the acknowledgments had been filed. However, Steven contends that a false acknowledgment is no acknowledgment at all. It is an absolute, not a relative nullity, and as such, produces no effects whatsoever.

La. C.C. art. 195 provides:

A man who marries the mother of a child not filiated to another man and who, with the concurrence of the mother, acknowledges the child by authentic act is presumed to be the father of that child.
The husband may disavow paternity of the child as provided in Article 187. Revocation of the authentic act of acknowledgment alone is not sufficient to rebut the presumption of paternity created by this Article.
The action for disavowal is subject to a peremptive period of one hundred eighty days. This peremptive period commences to run from the day of the marriage or the acknowledgment, whichever occurs later.

La. R.S. 9:406(B) provides:

(1) If the notarial act of acknowledgment has not been revoked within sixty days in accordance with the provisions of Subsection A of this Section, a person who executed an authentic act of acknowledgment may petition the court to annul the acknowledgment only upon proof, by clear and convincing evidence, that such act was induced by fraud, duress, material mistake of fact or error, or that the person is not the biological parent of the child.

(2) The petitioner shall institute the annulment proceeding by ordinary process in a court of competent jurisdiction upon notice to the other party who executed the notarial act of

3

acknowledgment and other necessary parties including the office of children and family services, child support enforcement section of the Department of Children and Family Services.

(3) If the court finds based upon the evidence presented at the hearing that there is substantial likelihood that fraud, duress, material mistake of fact or error existed in the execution of the act or that the person who executed the authentic act of acknowledgment is not the biological father, then, and only then, the court shall order genetic tests pursuant to R.S. 9:396. Nothing herein shall preclude the petitioner from presenting any other evidence as a substitute for the genetic tests if it is not possible to conduct such tests.

(4) The test results certified under oath by an authorized representative of an accredited laboratory shall be filed with the court and shall be admissible on the issue of paternity pursuant to R.S. 9:397.3.  If the test results show a statistical probability of ninety-nine point nine percent or greater, a rebuttable presumption of paternity shall be established.  If the acknowledged father is found excluded by the tests, an action seeking support or an established order of support shall be dismissed and the acknowledgment of paternity shall be annulled.  A judgment dismissing an established order of support does not affect any child support payment or arrearages paid, due or owing prior to the date the annulment was filed.

(5) The burden of proof in this proceeding shall be upon the party seeking to revoke the authentic act of acknowledgment. The testimony of the petitioner shall be corroborated by other evidence.

The legislative comments to the 2016 amendment of La. R.S. 9:406 state:

The 2016 revision repeals the two-year prescriptive period previously imposed for revocation of authentic acts of acknowledgment.  That prescriptive period was illogical where the acknowledgment was executed by a man who was not the father of the child.  The Louisiana Supreme Court has held the execution of such an acknowledgment to be an absolute nullity absent the requisite biological relationship supporting it. *Succession of Robinson*, 94-2229 (La. 5/22/95), 654 So. 2d 682. To speak of prescription when a father seeks a declaration of absolute nullity is inappropriate, as absolute nullities are imprescriptible.  La. C.C. art. 2032.

4

La. C.C. art. 1833(A) provides in part that an authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. La. C.C. art. 1835 provides that an authentic act provides full proof of the agreement it contains, as against the parties, their heirs, and successors by universal or particular title. La. C.C. art. 1848 provides that testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement. Likewise, where it is alleged that the authentic act is made in contravention to the law, evidence relevant to this fact is admissible to prove what legal effect, if any, the act will be given. *Succession of Robinson*, 99-2229 at p. 5, 654 So. 2d at 685.

In *Succession of Robinson*, *supra* at p. 4, 654 So. 2d at 684, the court declared that the validity of a formal acknowledgment depended upon whether the decedent was the intervenors' (the decedent's acknowledged children's) biological father. The court noted that, although C.C. art. 203, which provided for the formal acknowledgment of an illegitimate child, does not expressly preclude executing an acknowledgment where no biological relationship exists, this conclusion is self-evident and definitional of an acknowledgment. "Absent a biological relationship, the avowal is null. 'A fact cannot be avowed when it has never existed.' 1 M. Planiol, *Treatise on the Civil Law* § 1490(2) (La. St. L. Inst. Translation 1959)). If the acknowledgment is null, it produces no effects." *Id.*

5

In *McKinley v. McKinley*, 22-0132 (La. App. 1 Cir. 9/16/22), 352 So. 3d 1001, a husband filed a petition to annul his acknowledgments of paternity of his wife's two minor children based upon DNA tests establishing a zero probability of his paternity.[2] Following a trial, the judge sustained the wife's exception of prescription and dismissed the father's petition. The First Circuit reversed, in part based on *Barras v. O'Rourke*, 19-412 (La. App. 3 Cir. 12/18/19), 287 So. 3d 817, a case in which the Third Circuit held that the 2016 revision to La. R.S. 9:406(B) applied retroactively. Specifically, the Court in *Barras* found that the legislature's intent was "clear and unequivocal" that its repeal of the two-year prescriptive period previously set forth in that statute was retroactive. *Id.*, 19-412 at p. 4, 287 So. 3d at 820. The First and Third Circuits also observed in *McKinley*, 22-0132 at p. 6, 352 So. 3d at 1004, and *Barras*, *supra*, that it was with the 2016 amendment to La. R.S. 9:406(B) that the legislature codified the holding in *Succession of Robinson*, *supra*, in recognition of the well-settled principle that an absolute nullity is not subject to prescription or peremption.

The Third Circuit, in a similar case, reached a different result. *See*, *Wetta v. Wetta*, 21-92 (La. App. 3 Cir. 6/2/21), 322 So. 3d 365, *writ denied*, 21-00940 (La. 10/19/21), 326 So. 2d 255. This Court recognizes the conflict between its holding today and that of *Wetta*, *supra*. Nonetheless, in keeping with the rationale set forth in *Succession of Robinson*, and reiterated in *McKinley* and *Barras*, we find that Steven's acknowledgments are absolute nullities, and as such, productive of no legal effects from their execution. Therefore, his right to rescind his acknowledgments has not expired as it is

---

[2] One of the acknowledgments was effected by the father's signature on the child's birth certificate; the other was made in an authentic act of acknowledgment.

6

imprescriptible by nature. *See*, Sandi A. Varnado, Note, *A Primer on Biological Filiation in Louisiana*, 69 Loy. L. Rev. 237, 263 (2022). An acknowledgment of paternity based upon biology alone seems to be firmly rooted in Louisiana's civilian tradition, notwithstanding other legitimate societal concerns and public interests.

The obvious option for a non-biological father who wants to create a paternal relationship with a child who has no presumptive father would be adoption. *See*, La. C.C. art. 199, La. Ch. C. arts. 1167, *et seq.* Based on our determination that the acknowledgments in this case are absolute nullities, there is no need for us to discuss the other two assignments of error. When as in the case *sub judice*, the father is not the biological father, there is no prescriptive period for filing an action to rescind an acknowledgment. La. R.S. 9:392(A)(7)(b); *McKinley, supra*; Faucheux *v. Faucheux*, 00-20, p. 3 (La. App. 5 Cir. 10/31/00), 772 So. 2d 237, 239. If Steven can prove by clear and convincing evidence that he is not the father of Andrea Gail and Hannah Grace, his right to annul his acknowledgment of paternity has not been perempted.

## CONCLUSION

For the reasons set forth above, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion. Costs of the appeal are to be paid by both parties, each paying one-half of the total amount.

**REVERSED; REMANDED.**

7

**COX, J., concurs with written reasons.**

I agree with the ruling of the majority opinion, and I write to highlight the history of La. C.C. art. 195, which states, "*A man* who marries the mother of a child not filiated to another man and who, with the concurrence of the mother, acknowledges the child by authentic act or by signing the birth certificate is presumed to be the father of that child." (emphasis added).

Article 195 is located under "Section 2. Proof of Paternity." Even though titles within the civil code are not law, the legislature found fit to include this article under this section of the civil code. Comment (a) to this article states that this article corresponds to the circumstances of former La. C.C. art. 198 (rev. 1979) (hereinafter referred to as the "Old Article"), which recognized legitimation of the child by subsequent marriage. The Old Article and its predecessors, which can be tracked to its French roots, stated that *a child born outside of marriage* could be legitimated by "the subsequent marriage *of their father and mother*, whenever the later have legally acknowledged them[.]" (emphasis added). Therefore, our current article was created to correspond with the circumstances in which a child is born outside of marriage and the parents marry after the birth of the child. The Old Article was later interpreted to mean the acknowledgment was for a *biological father*; although historically, the term "biological" was not incorporated into our laws because the original language predates our 1804 Civil Code.

The current article brings with it our long-standing legal tradition that only a biological father may acknowledge an illegitimate child. *Succession of Robinson, supra*; J. R. Trahan, *Glossae on the New Law of Filiation*, 67 La. L. Rev. 387, 435 (2007); Verlander, 176. This is the case for

acknowledgements under both La. C.C. arts. 195 and 196. *See* Trahan, 426. Therefore, as stated by the majority opinion, because Kelley declares he is not the biological father, the acknowledgement would be an absolutely nullity and there is no peremptive or prescriptive period. The matter should be remanded for further proceedings concerning the annulment of his acknowledgment.

The 2016 Revision Comment to La. R.S. 9:406, which is quoted in the majority opinion, also supports this line of reasoning that an acknowledgment by someone other than the biological father is absolutely null. The legislature recognized the judicial requirement of a biological relationship in acknowledgments. Until the legislature expressly overrules the judicial tradition of holding an acknowledgment to be absolutely null without a biological relationship, applying the "plain meaning" without considering the history and intent of the enactors goes against the provisions of La. C.C. arts. 9 and 10. The process for acknowledgment should not be used to subvert our adoption procedures to suit personal conveniences. Neither party in this matter has clean hands.

Because of the contrary holding in *Wetta, supra*, there is a split in the circuit courts regarding acknowledgments, the requirement of a biological relationship, absolute nullities, disavowing, and peremption/prescription. Based on the history of La. C.C. art 195 and the relevant jurisprudence, I vote with the majority to reverse and remand.

**THOMPSON, J., concurs with written reasons.**

I concur in the opinion and write separately to address two lingering concerns; (1) the implications of the abuse of the expedited process in our laws of the use of a sworn acknowledgment of paternity to establish paternity of children born out of wedlock and uniting those families; and (2) whether the self-serving[3] actions of executing a fraudulent acknowledgment of paternity and then challenging the legitimacy of that document to escape child support comes without consequences. Mr. Kelley originally exercised an expedited process by fraudulently acknowledging children who were not his biological children to accomplish the same legal result as though he had adopted them. His shortcut came without the time and expense of an adoption process and without the included protections afforded the actual biological parents had there been an adoption proceeding and hearing. He now challenges his own actions in that expedited process to avoid paying child support for his fraudulently acknowledged children.

Fraudulent acknowledgments abuse the system designed to expedite fathers acknowledging children born out of wedlock and clarify the corresponding legal rights and responsibilities of the parties. Abuse of that process for individual convenience is injurious to the confidence of our citizens in our laws that allow for expedited consolidation of families and should be confronted seriously. The fraudulent affidavits in the present matter are false public records which injure our public records, and

---

[3] Whether there were corresponding tax benefits with added dependents it not included in the record but seem likely, and he avoided the costs and delays associated with a legitimate adoption proceeding.

1

appropriately expose the parties to possible prosecution.[4]  Here, a father is attempting to avoid child support obligations by pointing to his own fraudulent sworn document as a nullity.  Such actions are not without consequences.  The shield asserted by the ineffectiveness of the sworn affidavit also serves as the sword for prosecuting the original filing of such a document.

Any party asserting their acknowledgment of paternity was an absolute nullity due to its fraudulent nature may well use the law to avoid the obligations of paying child support.  However, those same individuals should be held to account by the law for their fraudulent actions and abuse of the process that is designed to help strengthen families, not create a manipulative safe harbor from child support.

---

[4] La. R.S. 14:132 and La. R.S. 14:133

2

**PITMAN, C. J., dissents**.

I respectfully dissent.

This case is not a difficult one to decide. It is controlled by La. C.C. art. 195, which was enacted in 2005 as a revision to former filiation articles, and before a subsequent revision in 2016. The 2005 version of La. C.C. art. 195 reads as follows:

> A man who marries the mother of a child not filiated to another man and who, with the concurrence of the mother, acknowledges the child by authentic act or by signing the birth certificate is presumed to be the father of that child.
>
> The husband may disavow paternity of the child as provided in Article 187.
>
> The action for disavowal is subject to a peremptive period of one hundred eighty days. This peremptive period commences to run from the day of the marriage or the acknowledgment, whichever occurs later.

Steven Kelley married Jeannie Kelley on December 10, 2011. Jeannie was the mother of two young girls at the time of the marriage, neither of whom was filiated to another man.

On August 21, 2012, Steven acknowledged the older child by authentic act with the concurrence of Jeannie; and, on August 14, 2014, Steven acknowledged the younger child with the concurrence of Jeannie. These acknowledgments created a legal presumption that Steven is the father of both girls.

In February 2019, Steven and Jeannie separated. On June 20, 2019, Jeannie filed an amended and supplemental petition for divorce and requested child support from Steven. On May 16, 2022, Steven filed a petition to revoke his acknowledgments of both children, which was

1

followed by Jeannie filing exceptions of no cause of action and peremption on June 8, 2022.

A hearing was held on November 29, 2022, during which the trial court granted the peremptive exception, styled as a petition to revoke acknowledgments of paternity of both children, which was essentially a disavowal action.

I agree with the trial court that, according to La. C.C. art. 195, Steven Kelley is the legal father of the two children and that he freely accepted these responsibilities in 2012 and 2014 with the concurrence of his wife, the mother of the children.

Steven could have disavowed either of the children, as described in La. C.C. art. 187, within 180 days from the date of the acknowledgment. The first right to disavow perempted 180 days after August 12, 2012, and the second right to disavow perempted 180 days after August 14, 2014. Since neither disavowal occurred, Steven's right to disavow either child was extinguished.

> According to La. C.C. art. 3458:
>
> Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon expiration of the peremptive period.

The majority fails to recognize that Louisiana law allows for different kinds of paternity. There may be biological paternity or presumed paternity or both. In the case before us, Steven Kelley is presumed to be the father of Jeannie's two daughters since he did not disavow either child within the time allowed by Article 195, or by the means allowed by La. C.C. art. 187, which states as follows:

2

> The husband may disavow paternity of the child by clear and convincing evidence that he is not the father. The testimony of the husband shall be corroborated by other evidence.

Steven's right to disavow passed many years ago.

The majority and one of the concurrences rely on the case of *Succession of Robinson*, 94-2229 (La. 5/22/95), 654 So. 2d 682, which was decided by the Louisiana Supreme Court in 1995 and deals with forced heirship in a succession contest. It is not relevant to Article 195, which was enacted in 2005 and allows for acknowledgment of unfiliated children with the concurrence of their mother and creates a presumption of paternity that is perempted if not disavowed within 180 days.

The majority is also incorrect in relying on *McKinley v. McKinley*, 22-0132 (La. App. 1 Cir. 9/16/22), 352 So. 3d 1001, and *Barras v. O'Rourke*, 19-412 (La. App. 3 Cir. 12/18/19), 287 So. 3d 817, which deal with the 2016 revision of La. R.S. 9:406. The case we are deciding was finished by peremption of the right to disavow in 2014, at the latest.

In the instant case, we can refer to La. C.C. art. 9, which states:

> When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.

Steven Kelley is the legal father of both girls and can be required to support them as would any father or mother when a divorce occurs.

Accordingly, I would affirm the judgment of the trial court.

3

**HUNTER, J., dissenting.**

Since their respective inceptions, America and the "Gret Stet" of Louisiana, along with God, country, and family serving as their moral compass, established their constitutions with an impregnable respect for these tenants firmly nestled in or laws, customs, and mores.

While my colleagues are supportive of solely criminal punitive charges associated with injuring of public records, this is at best, a penultimate concern.

We are a state where marriage, family, and children are purportedly sacrosanct. The courts have long since established and evolved the maternal and best interest of children laws to counteract the prior paternalistic leaning legislation and jurisprudence. However, to allow a lawfully married and professed parent to withdraw their sworn obligation to protect and provide for their children is simply not in the best interest of children. This action, if sanctioned by this Court, would lead to a proliferation of persons seeking to invalidate parental obligations simply because of separate and unrelated relationship strife.

In this particular case, I believe the "penalty" for the "fraudulent" signature is parentage. This was no fault of the children. The children sought nothing of the parties involved but support and affection. Nothing between the parties to this suit should lead to a deleterious effect on the children. Finally, we are a state where biological and putative fathers can both be bound for financial obligations based on mere signatures. Until the legislature addresses the inequitable aspects of these actions, I see no difference in responsibility here.

1